UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORTHEAST MEDICAL SERVICES, INC., <br><br> Plaintiff, <br><br> v. <br><br> CALIFORNIA DEPARTMENT OF HEALTH CARE SERVICES, HEALTH AND HUMAN SERVICES AGENCY; JENNIFER KENT, DIRECTOR OF THE DEPARTMENT OF HEALTH CARE SERVICES, and STATE OF CALIFORNIA, <br><br> Defendants. | No. 2:19-cv-01489 <br><br> **ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS AND STAYING PLAINTIFF'S CLAIMS FOR DECLARATORY RELIEF** |

In August 2019, North East Medical Services, Inc. filed its complaint against the California Department of Health Care Services, the Department director in her official capacity, and the State of California (collectively "Defendants"). Compl., ECF No. 1. Defendants filed a motion to dismiss each of Plaintiff's four causes of action. Mot. to Dismiss, ECF No. 15; see also Memorandum in support of Mot. to Dismiss ("Mot."), ECF No. 16. Defendants argue the failure to exhaust administrative remedies makes dismissing the case prudent and that Eleventh Amendment sovereign immunity makes it necessary. Mot. at 9-14. Plaintiff

1

opposes Defendants' motion, contending neither exhaustion nor sovereign immunity applies here. Opp'n at 3-15, ECF No. 23.

The Court finds the Eleventh Amendment bars Plaintiff's claims for injunctive relief. Moreover, the Court finds that imposing an exhaustion requirement is warranted and would promote the most efficient use of judicial resources. The Court therefore DISMISSES Plaintiff's claims for injunctive relief and STAYS its claims for declaratory relief pending resolution of the state administrative proceedings.[1]

I. BACKGROUND

Plaintiff is a federally-qualified health center ("FQHC"). Compl. ¶ 1. As an FQHC, Plaintiff provides primary care services to poor and medically-underserved populations in the San Francisco area. Compl. ¶ 13. FQHCs are entitled to recover the reasonable cost of ambulatory services that they provide to Medicaid beneficiaries. Compl. ¶ 22. State Medicaid programs approximate this cost and compensate FQHCs through fixed, per-visit fees. Id.

Federal and state law also allow FQHCs to be compensated for the reasonable cost of their services through subcontracts with Medicaid managed care organizations ("MCO's"). Compl. ¶3. Pursuant to this allowance, Plaintiff entered a subcontract with an MCO called the San Francisco Health Plan ("SFHP"). Id. Under this subcontract, Plaintiff agreed to provide services covered by

---

[1] This motion was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g). The hearing was scheduled for November 19, 2019.

2

California's Medicaid program to SFHP's Medicaid beneficiaries. See Compl. ¶ 2. In turn, SFHP agreed to pay Plaintiff "not less than" what it would pay non-FQHC providers for the same services. Compl. ¶¶ 2, 33. Plaintiff also alleges this subcontract included a "physician incentive plan," in which SFHP agreed to make "special payments" to Plaintiff for the "physician/provider risks" it incurred under the subcontract. Compl. ¶¶ 35-37.

When an FQHC's reasonable cost of care exceeds the amount paid by an MCO, federal law requires the state's Medicaid program to make up the difference. Id. This supplemental payment is known as a "wraparound payment." Id. Plaintiff received wraparound payments from the Department of Health Care Services for the FQHC services it rendered from 2008-2016. See Compl. ¶ 4. In 2013, however, the Audits and Investigative Branch of the Department began to investigate the propriety of those payments. Compl. ¶ 45. The Department ultimately concluded that Plaintiff failed to adequately show it "properly allocated the income received from SFHP between FQHC and non FQHC services." Compl. ¶ 51. Viewing all of Plaintiff's SFHP-derived income as compensation for the reasonable cost of its FQHC services, the Department found SFHP had, in fact, fully compensated Plaintiff. Compl. ¶¶ 51, 53. It notified Plaintiff that the Department would have to "recoup" the "FYE 2015 Supplemental wrap payments" Plaintiff previously received. Id. When the Department overpays a FQHC, it recoups past payments by offsetting or withholding funds from current and future reimbursements. Compl. ¶ 8.
///
///

3

II.   OPINION

   A.   Judicial Notice

Under Federal Rule of Evidence 201, a district court may take judicial notice of a fact that is "not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). It is well-established that "a court may take judicial notice of matters of public record." Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001). "Matters of public record" include records from administrative proceedings. United States v. 14.02 Acres of Land More or Less in Fresno County, 547 F.3d 943, 955 (9th Cir. 2008).

Defendants request the Court judicially notice five documents:

   1.   North East Medical Services' Complaint in this case;
   2.   North East Medical Services' Request for Administrative Hearing;
   3.   Notice of Formal Hearing issued by the Office of Administrative hearings and Appeals;
   4.   North East Medical Services' discovery request to the Department of Health Care Services in its administrative appeal; and
   5.   North East Medical Services' response to the Department of Health Care Services' discovery request in its administrative appeal.

Request for Judicial Notice, ECF No. 17; Additional Request for Judicial Notice, ECF No. 25. Plaintiff does not oppose these

requests.

The Court need not and will not take judicial notice of Plaintiff's complaint. Defendants' request for judicial notice of this document is DENIED. The Court does, however, find that documents 2-5 are proper subjects of judicial notice. With respect to these four documents, Defendants' request is GRANTED.

B. Sovereign Immunity

1. Legal Standard

The Eleventh Amendment bars plaintiffs from filing suit against unconsenting states to recover past damages. U.S. CONST. XI amend.; see also Edelman v. Jordan, 415 U.S. 651, 667-78 (1980). This immunity likewise protects state officials acting in their official capacity. Edelman, 415 U.S. at 661. Even so, a judicially-crafted exception to the Eleventh Amendment permits federal actions against states and state officials when a plaintiff seeks to compel a prospective compliance with her federal rights. Ex parte Young, 209 U.S. 123, 157 (1908).

To claim the Ex parte Young exception, a plaintiff must do more than simply allege her requested relief is forward-looking. See Indep. Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly, 572 F.3d 644, 659-60 (9th Cir. 2009), vacated and remanded on other grounds sub nom. Douglas v. Indep. Living Ctr. Of S. Cal., Inc., 132 S. Ct. 1204 (2012). Indeed, a suit that requests prospective injunctive relief in theory, but retrospective damages in fact, will not elude a state's immunity. See id. at 660. For example, the Ninth Circuit found that when a plaintiff requests an order requiring the state "to perform [its] legal duty to dispurse[] funds," she "essentially seeks an injunction

directing the state to pay damages." Id. (internal quotations omitted). This, the Ninth Circuit explained, is "precisely the type of retroactive [sic] relief that the Supreme Court refuse[s] to allow." Id. (citing Native Village of Noatak v. Blatchford, 38 F.3d 1505, 1512 (9th Cir. 1994) overruled on other grounds Board of Trustees of Glazing Health and Welfare Trust v. Chambers, 941 F.3d 1195 (9th Cir. 2019).

2. Analysis

Plaintiff contends the Ex parte Young exception applies here because Plaintiff's prayer for relief does not seek backward-looking compensation. Opp'n at 13-15. Plaintiff argues it already owns the money Defendants are withholding because the funds consist of payments Plaintiff is "indisputably owed." Id. To that end, Plaintiff maintains injunctive relief would not pull money out of the state treasury; it would simply keep Defendants' hands out of Plaintiff's pockets. Id. This position rests upon the theory that preventing a state from withholding reimbursement payments amounts to prospective relief so long as the payments have not yet been withheld. See Opp'n at 13-15.

But, as Defendants argue, this theory of prospective relief is barred by law. Mot. at 13-14 (citing Indep. Living Ctr. Of S. Cal., 572 F.3d at 661 n.19). In Indep. Living Ctr., the Ninth Circuit found that the question of "whether relief is prospective or retrospective in the Medicaid payment context turns on the date of service, not the date of payment." 572 F.3d at 661 n.19. Plaintiff alleges the decision to withhold FHQC payments results in inadequate reimbursement for services

6

it rendered from 2008 to 2016.  Compl. ¶¶ 4, 61.  Under the date of service test, Plaintiff's attempt to compel additional reimbursement for these services is plainly retrospective.

Citing to North East Med. Servs, Inc. v. State of Cal. Dep't of Health, 670 Fed.Appx. 615, 616 (9th Cir. 2016), Plaintiff argues the date of service test does not apply here. There, the Ninth Circuit found the Northern District of California "erred by applying the date of service test to hold that North East was seeking retrospective monetary relief." Id. at 615.  But this finding did not categorically do away with the date of service test in the Medicaid context; indeed, it did not purport to modify the test's application at all.  See id. at 615-16.  In North East Med. Servs., North East sought to "enjoin the director of California's health services from requiring it to disclose its Part D money when settling up for the 2008 fiscal year." Id. at 616.  The Ninth Circuit expressly stated that it did not use the date of service test to determine whether the injunction sought was retrospective "because North East [was] not asking for additional reimbursement from California for medical services that it provided in 2008." Id. Rather, North East sought to prevent the state from requiring it to disclose certain information. Id. Here, however, additional reimbursement is precisely what Plaintiff requests.  The date of service test therefore applies.

Under the date of service test, Plaintiff's proposed injunction seeks retrospective relief from nonconsenting state defendants.  Accordingly, the Eleventh Amendment bars Plaintiff's request for injunctive relief.  The Court GRANTS

7

Defendants' motion to dismiss with respect to this remedy.

C. Exhaustion

1. Legal Standard

The exhaustion doctrine precludes judicial review of issues, both legal and factual, until a plaintiff completes all available avenues of administrative review. See Patsy v. Bd. of Regents of State of Fla., 457 U.S. 496, 498-502 (1982). An exhaustion requirement may arise from either an act of Congress or judicial decree. United States v. Cal. Care Corp., 709 F.2d 1241, 1248 (9th Cir. 1983). When a statute requires exhaustion, federal district courts lack jurisdiction over the dispute until the administrative proceedings conclude. Id. When exhaustion is not required by codified law, courts retain discretion to conduct parallel proceedings with a federal or state agency. Id. Before doing so, however, a court must consider three questions: (1) whether agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) whether relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) whether administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review. Id. A court will impose a judicially-crafted exhaustion requirement if these factors weigh in favor of doing so. Id.

2. Analysis

Neither party contends exhaustion is statutorily mandated. Rather, the only question is whether the three factors discussed above favor requiring exhaustion in this case. The Court finds

that each of the three factors weigh in favor of imposing an exhaustion requirement here. First, agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision here. While Plaintiff's complaint raises claims under federal law, adjudication of those claims necessarily implicates questions about how the state of California administers its Medicaid program. As Defendants argue, this Court will benefit from a full development of the factual record by a state agency with expertise in that area. Reply at 2-3.

The second and third factors likewise weigh in favor of an exhaustion requirement. The Court adopts the reasoning set forth in Defendants' motion—and reiterated in their reply brief—for each of these two factors. See Mot. at 11-12; Reply at 3-4.

Plaintiff contends that requiring exhaustion is not only futile, but also likely to cause it to suffer greater harm. Opp'n at 10-11. The Court disagrees. As Defendants argue, it is conceivable that the administrative review process may moot the instant matter. Reply at 3-4. Moreover, the Court does not find that imposition of an exhaustion requirement portends irreparable harm for Plaintiff. This is particularly true given this Court's finding that Plaintiff cannot use this Court to enjoin Defendants from continuing to offset its reimbursement payments. And if this Court or an administrative law judge were to eventually find that Plaintiff was not over-reimbursed, then Defendants would be required to repay the amount collected, together with the payment of interest. Reply at 4, n.4..

Accordingly, the Court finds the three California Care Corp

factors weigh in favor of imposing an exhaustion requirement. The Court does not however agree with Defendants that requiring exhaustion also requires dismissing a case when the plaintiff has not yet exhausted its administrative remedies. Rather, the Court STAYS Plaintiff's remaining claims for declaratory relief pending completion of the state proceedings.

## III. ORDER

For the reasons set forth above, the Court GRANTS IN PART Defendants' motion to dismiss. The Court DISMISSES Plaintiff's claims for injunctive relief and STAYS Plaintiff's claims for declaratory relief pending resolution of the state administrative proceedings

IT IS SO ORDERED.

Dated: December 19, 2019

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE